### Appeal of CITIZENS LOAN ASSOCIATION. Docket No. 412.

Under the facts disclosed by this appeal the income of the taxpayer was that of a corporation in the calendar years 1918 and 1919 and properly taxable as such; for the year 1920 the income of the taxpayer was that of a copartnership and should be apportioned among the partners according to their interests and taxed accordingly.

Submitted January 14, 1925; decided January 31, 1925.

*Charles R. Napier, Luther F. Speer,* and *Fred A. Woodis, Esqs.,* for the taxpayer.

*Robert A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

### FINDINGS OF FACT.

1. On March 1, 1905, three men, Lewis E. Crews, Loren F. Bronte, and John A. Breen, entered into a partnership agreement to engage as copartners in the business of private banking and lending money. The style of the firm was " Crews, Bronte, & Breen." By the terms of its agreement the firm had a life of 10 years. These partners immediately began business in the city of Chicago, Ill., with business quarters at 840 West Sixty-third Street, and at 608 Tacoma Building, 5 La Salle Street. It does not appear from the record at what time the partnership business assumed the name and style of " South Side Savings Bank," but it does appear that by the beginning of the year 1910 this partnership had definitely assumed that name. The Sixty-third Street place of business had the appearance of the ordinary bank. The office at 5 La Salle Street was on an upper floor and had the appearance of a regular loan office. No banking business was done at the latter address and no deposits were accepted there, but only the small loan or " chattel loan " business was there engaged in.

2. On June 19, 1914, an agreement was entered into between L. E. Crews, John A. Breen, K. J. Phelan, and A. B. Monroe wherein it is recited in the preamble that Crews and Breen are doing business as partners in the banking and chattel loan line under the name and style of " South Side Savings Bank"; this agreement further provides for the sale by Crews to the other parties to the instrument of certain of his interest in this business, as follows: To Phelan, 8 per cent; to Monroe, 9 per cent; to Breen, 13 per cent. The agreement provides how payment shall be made and it is stipulated that the purchase price of these percentage interests shall be Phelan, $15,666.76; Monroe, $17,625.11; Breen, $25,458.49.

3. In January, 1910, Crews, Bronte, and Breen, formed a new business which they called "Half Rate Loan Company." It was not located at either of the offices of the South Side Savings Bank and it did not accept deposits. It first had a temporary office on Sixty-third Street for a short time and was thereafter located at Sixty-third and Halstead Streets. On February 1, 1910, the Half Rate Loan Company was incorporated under the Laws of the State of Illinois. The certificate of incorporation was to C. A. Leatzow, E. C. Lindsey, and S. J. Dillon, and provided for a capitalization of $2,500 divided into 25 shares of the par value of $100 each. The original subscribers to the capital stock of this corporation were C. A. Leatzow (1 share), Alice R. Leatzow (1 share), M. Schaub, (5 shares), M. L. Statler (18 shares). From the time of the organization of this corporation until its name was changed by amendment of its charter to "Citizens Loan Association," about August 4, 1917, (as appears in paragraph 8 hereinafter) Crews, Bronte, Breen, and South Side Savings Bank, furnished all the capital of this business and appropriated all of the profits—except that Bronte died in 1914. From about 1914 the Half Rate Loan Company corporation was self sustaining and did not need any more advances of money from the South Side Savings Bank or from the individuals mentioned. Monroe and Phelan, who were partners in the South Side Savings Bank, had no interest in the corporation, never advanced any moneys to it and never shared in any profits from it. With the exception of Leatzow, the original subscribers and stockholders in the corporation were dummies and had no actual interest in it. After the death of Bronte the actual interests in the corporation were Crews, Breen, and Leatzow. The interests in the South Side Savings Bank, the copartnership, were Crews, Breen, Phelan and Monroe. During this period the individuals named carried on the business of making small loans as above outlined at the Halstead Street office. During that same period there were only five stock transfers. These occurred some time prior to November 1, 1912, and involved the transfer of eight shares to Crews. During that period none were issued or transferred to Bronte or Breen.

4. At the expiration of the ten-year contract referred to in paragraph 1, another partnership agreement was executed. This agreement was dated March 1, 1915, and the parties thereto were Crews and Breen. Therein the parties agreed to engage as partners in the banking and loan business in Chicago (at the same offices mentioned in the prior contract of March 1, 1905) under the name and style of " South Side Savings Bank." The parties agreed to furnish funds in proportion to their respective interests necessary to maintain a balance in bills receivable of $160,000. It was further agreed that Crews and Breen should divide between themselves 64 per cent of the profits—25 per cent to Crews and 39 per cent to Breen. Losses were to be shared on the same basis. The remaining 36 per cent of gains and profits was stipulated to be divided between Monroe and Phelan (and losses on a similar basis) in accordance with the contract referred to in paragraph 2 which was by reference specifically made a part of the agreement of March 1, 1915. The term of this agreement was ten years. It was further stipulated that neither of said partners should endorse or become surety on any obligation without the consent of the other party to this agreement, and that

each should execute a will appointing the other party to the agreemen as his executor and therein direct such executor to continue the business for two years after his decease, and at the end of such two years the surviving partner should have the option of buying the deceased partner's interest at its then book value. The parties signing this instrument were Crews and Breen.

5. On February 7, 1917, an agreement was executed by Crews, Breen, Monroe, and Phelan, reciting that they are partners engaged in the business of lending money, under the name and style of "South Side Savings Bank," located at 724 West Sixty-third Street and at suite 314 Tacoma Building, Chicago, Ill. The agreement further recites that it is the desire and intention of each of said copartners that the death of any one or more of them shall not, as between the survivors of them, dissolve or terminate said copartnerships. To effectuate this intent the agreement provided:

1. That the interest of each copartner in said copartnership and the assets thereof shall be limited (except as hereinafter provided) to a life estate only, terminating immediately upon such copartner's death, and that no interest in said copartnership, nor the assets thereof shall ever pass by will or descent, but that this contract shall in no wise affect such interest during the life of such copartner.

2. That upon the death of any one of said copartners, the survivors of them shall at once become jointly liable to the estate of such decedent in a sum of money exactly equal to the book value of such decedent's interest in said copartnership and the assets thereof next immediately before his death, and said survivors shall pay said sum to the executor or administrator of such decedent within sixty (60) days subsequent to the time such executor or administrator shall qualify as such and enter upon the discharge of his duties.

3. That in making any payment provided for by this contract the then surviving copartners shall contribute thereto (as between themselves) in the same proportion as they are then interested in said copartnership and the assets thereof.

4. That when only one of said copartners shall survive, and he shall have paid all moneys for which he became liable under the terms of this contract to the person or persons entitled thereto, then this contract shall become null and void, but until that time it shall remain in full force and effect, and be applicable at the death of each copartner.

6. At the beginning of their affairs under the agreement referred to in paragraph 1, the partners, Crews, Bronte, and Breen, had placed on the doors of their places of business the words: "Crews, Bronte, and Breen." Later, as the name "South Side Savings Bank" began to be used, that name was also placed on the doors with the names of Crews, Bronte, and Breen immediately underneath. After the death of Bronte the names so appearing underneath were those only of Crews and Breen. The letterheads of the business were in similar form. During all the times referred to in the foregoing paragraphs the bank accounts were carried in the name of "South Side Savings Bank." When money was borrowed to use in the business the note evidencing the loan was signed "South Side Savings Bank. J. A. Breen and L. E. Crews, partners." Notes, mortgages, etc., taken as evidences of debt for moneys loaned by this business were taken either in the name of South Side Savings Bank or in the individual names of Crews, Bronte, and Breen. As heretofore stated, the business transacted was a combination of banking, including the acceptance of deposits, issuance of certificates of deposit, cashier's checks, etc., and that of small loans or "chattel loans" as distin-

guished from banking. Of the total business done, approximately 20% was banking business and 80% was small-loan business. During this period the leases to the premises at Sixty-third Street and at La Salle Street ran in the names of the individual partners.

7. On June 14, 1917, the Legislature of the State of Illinois enacted a statute known as the "small-loan act." This statute became effective on July 1, 1917, and was entitled "An act to license and regulate the business of making small loans in sums of $300 or less, secured or unsecured, at a greater rate of interest than 7 per centum per annum, prescribing the rate of interest and charge therefor * * *." This statute fixed the maximum rate of interest on loans of $300 or less at 3½ per cent per month; changed the then-prevailing method of computing and collecting interest thereon; regulated the taking of security for such loans; provided for supervision of lender's offices by a public department and for giving of bonds and issuance of licenses. Pursuant to this act licenses were taken out on January 2, 1918, as follows: To C. A. Leatzow, doing business as "Citizens Loan Association," at 5 North La Salle Street; to A. B. Monroe, doing business as "Citizens Loan Association," at 724 West Sixty-third Street; and on January 1, 1919, licenses were issued to L. E. Crews and J. A. Breen, doing business as "Citizens Loan Association," at 5 North La Salle Street; and to L. E. Crews and J. A. Breen, doing business as "Citizens Loan Association," at 724 West Sixty-third Street. Each of the licenses referred to was for a period of one year.

8. A short time prior to July 1, 1917, the name "Citizens Loan Association" began to be used and, although the record is not entirely clear on this point, it appears that this name was used interchangeably with that of "South Side Savings Bank" to designate the partnership business. It definitely appears that on July 1, 1917, the doors at both the Sixty-third Street office and the La Salle Street office bore the names "South Side Savings Bank" and "Citizens Loan Association"—the latter immediately underneath the former. These names so appeared there until December 30, 1920. About this time (the record does not disclose the exact date) application was made by the Half Rate Loan Co., the corporation, for an amendment to its charter enlarging its powers and changing its name to "Citizens Loan Association." The following certificate was received in evidence at the hearing:

CERTIFICATE OF CHANGE OF NAME AND ENLARGEMENT OF OBJECT OF HALF RATE LOAN COMPANY, A CORPORATION.

The undersigned, the President of said Corporation, does hereby certify that at a special meeting of the Stockholders of said Corporation, at which all of the said stockholders were present in person or proxy, a motion to change the name of said corporation from "Half Rate Loan Company" to "Citizens Loan Association" and to enlarge the object of said corporation to include the carrying on of a general and special advertising business, the soliciting of orders for goods, wares, and merchandise for and on behalf of other persons, firms, and corporations, and the soliciting of applications for loans (secured and unsecured) for and on behalf of other persons, firms and corporations, was duly made, seconded, and carried by a unanimous vote of all of the stockholders of said Corporation.

[SEAL.]                    (Signed)        CHARLES A. LEATZOW,
Seal of Corporation.                                    President.

STATE OF ILLINOIS,
        *County of Cook, ss:*

CHARLES A. LEATZOW, being first duly sworn, deposes and says that he has read the foregoing certificate by him subscribed, and that the statements in said certificates contained, and each of them, are true of his own knowledge, and further affiant saith not.

(Signed)        CHARLES A. LEATZOW.

Subscribed and sworn to before me on this the 20th day of July, A. D. 1917.

[SEAL.]                      (Signed)        G. J. DICKSON,
                                                *Notary Public.*

The above was duly published in the Chicago Daily Law Bulletin for the requisite statutory period beginning July 21, 1917, and on August 4, 1917, the name of the corporation "Half Rate Loan Co." was changed to "Citizens Loan Association." Five hundred shares of the stock of the capital stock of the Citizens Loan Association, of the par value of $10 each, were issued immediately, as follows: Breen, 176 shares; Crews, 125 shares; Monroe, 65 shares; Phelan, 69 shares; Leatzow, 65 shares. Certificates evidencing the ownership of this stock were issued to the stockholders as shown above. The share holdings of these men in the Citizens Loan Association, the corporation, were in the same ratio and percentage as their respective interests in the Citizens Loan Association, a trade name or *alter ego* of South Side Savings Bank before the incorporation of the Citizens Loan Association.

9. At the time of the change of its name to "Citizens Loan Association," a corporation, or just prior thereto, the Half Rate Loan Co. distributed its net assets in the amount of approximately $46,000. Monroe and Phelan did not share in this distribution, as they had never been stockholders or had any interest in the Half Rate Loan Co., although they had interests as partners, as above stated, in the Citizens Loan Association before the latter became a corporation, and were likewise partners in the South Side Savings Bank. The business of the Half Rate Loan Co. was discontinued as such and all the partners of the Citizens Loan Association became stockholders in the successor corporation by that name, as set out in paragraph 8, above. Just prior to this time it had been determined that the banking business, which was proving the less profitable venture, would be gradually liquidated and closed out. Accordingly, $60,000 (approximately) of the funds engaged in the business was set aside to pay off depositors on the banking side. From that time on to its end the South Side Savings Bank gradually paid off its depositors and went out of business—still carrying its name of South Side Savings Bank. On the other hand the small loan business which was by far the major portion of the business assumed the name of Citizens Loan Association and the loan business was carried on separately under that name. The assets of the business were approximately $216,000. Of this amount $60,000 was allocated to the banking side for its liquidation. The remaining $156,000 (approximately) was carried to a separate account for the prosecution of the loan business then beginning to be done under the name "Citizens Loan Association." Two separate sets of books were set up, one the South Side Savings Bank and the other the Citizens Loan Association. The five men above mentioned in paragraph 8 had the same moieties of interest in both the South Side Savings Bank and the

Citizens Loan Association—and upon the incorporation of the Citizens Loan Association (as successor to Half Rate Loan Co.), which occurred at about this time, these five men became its stockholders in the same ratio.

10. From August 4, 1917, when the old corporation became the Citizens Loan Association, the banking business carried on as South Side Savings Bank dwindled to its end and became extinct at the close of the year 1920. The corporation now known as Citizens Loan Association continued to exist without change in stockholders or their interests until early in 1920, at which time the corporate minute book shows a transfer by Breen of 2 per cent of his stock to Leatzow and 2 per cent to an employee named Olendorf. The same loan business continued to be carried on under the name of Citizens Loan Association throughout this same period. There were distributions at irregular intervals of the profits of the Citizens Loan Association and these were regularly entered on the corporate books and denominated " dividends," although it appears from the evidence that there was no meeting of directors in regular form declaring such dividends and ordering their payment. It further appears from the evidence that the distributions of profits formerly made in South Side Savings Bank, a copartnership, and in the Citizens Loan Association before its incorporation were similarly denominated " dividends." The lease on the premises at 724 West Sixty-third Street from May 1, 1917, to April 30, 1918, ran in the name of Crews & Breen trading as South Side Savings Bank, while the lease at 5 North La Salle Street ran for the same period to Crews & Breen. During the period from August 4, 1917, through the year 1920 no legal action or suit brought by the Citizens Loan Association was ever brought as a corporation. The funds of the Citizens Loan Association were not banked as a corporation and its checks were not drawn in corporate form.

11. From the year 1913 to the end of its existence, corporation income tax returns were filed each year by the Half Rate Loan Co. During that same period the partners filed informative partnership returns of the income of the South Side Savings Bank and paid tax thereon as individuals. Likewise, after its coming into existence as a corporation in 1917, the Citizens Loan Association regularly filed its income tax returns as a corporation and paid its taxes as such for the years 1917, 1918, and 1919. The return of income of South Side Savings Bank was made on a partnership basis. Similarly the Citizens Loan Association regularly executed and filed capital stock tax returns. The income, excess profits, and capital stock tax returns were introduced in evidence at the hearing of this appeal and filed as exhibits in the record.

12. Matters went along in this wise until some time in 1919, shortly after June 10, 1919, when the Citizens Loan Association filed its corporation returns for the year 1918 in the manner set out above. Here we let Mr. J. A. Breen, President and Acting Treasurer of Citizens Loan Association, tell the story under examination by his counsel:

Q. Did any question ever come up between the gentlemen as to the propriety of making corporation returns for the earnings of this business?
A. What do you mean?

Q. Did any such question ever come up?
A. Yes.
Q. When?
A. The first time was in 1917, when we filed—
Q. And later on?
A. And later on in 1920. Shortly after we filed for 1920 (*sic*)—shortly after March, 1919, we had occasion to hire two or three Government men in Chicago to work on this account, and when we stated the nature of the business that we filed for, for the last two or three years, they laughed at us and stated that we were entitled to file as copartners; that started this proposition. They told us to file an appeal together with amended returns; that was some time in 1920, and shortly after we filed our 1919 taxes.
Q. Did you think that that was good advice?
A. Yes, we thought it was. We did not seem to get anywhere, but we thought it was good advice. We got our information from two different sources, that is, two different Government revenue men who were in the service, and both advised us the same thing.
Q. Prior to the time you concluded to file a petition for a refund, were any steps taken, so far as you know, to clear up this matter?
A. We formed another partnership agreement.
Q. That is, you mean you entered into another agreement?
A. We still had one running, but we entered into another.

The agreement referred to by the witness was executed December 27, 1919, and is as follows:

This agreement between Lewis E. Crews, John A. Breen, Kieran J. Phelan, Archa B. Monroe and Charles A. Leatzow all of the city of Chicago, Illinois, made *December 27, 1919*.

Witnesseth:

(a) Whereas, the parties hereto are *all of the stockholders of Citizens Loan Association*, an Illinois corporation, which has offices at No. 5 North La Salle Street, No. 724 West Sixty-third Street and No. 6240 Cottage Grove Avenue, in said city, where small loan businesses are conducted by said parties as principals or employees, and,

(b) Whereas, the laws of Illinois do not *permit a corporation to carry* on such a business, and

(c) Whereas, said corporation has caused increased taxation to said parties and confusion in the transaction of said business, and

(d) Whereas, said parties desire to reorganize said business so that it will apparently as in fact conform to law and be exempt from inequitable taxation, and

It is therefore agreed by and between said parties:

1. That a copartnership be and hereby is organized to carry on a small loan business at the places above named under the name and style of Lewis E. Crews, and John A. Breen, doing business as Citizens Loan Association, Copartners:

2. That the interests in said copartnership shall be held as follows:

Lewis E. Crews, twenty-five per cent (25) of the whole.
John A. Breen, thirty-five and 2/10 (35–2/10) per cent of the whole.
Kieran J. Phelan, thirteen and 8/10 (13–8/10) per cent of the whole.
Archa B. Monroe, thirteen (13) per cent of the whole.
Charles A. Leatzow, thirteen (13) per cent of the whole.

3. *    *    *
4. *    *    *
5. *    *    *
6. *    *    *

7. That all of the assets of said corporation including good will, shall on January, 1920, at the opening of business be paid, assigned, delivered, and turned over to said copartnership, which shall continue said business substantially as theretofore and said corporation shall be dissolved, in the manner provided by the Statute, as soon as it conveniently can be done.

8. That this contract shall remain in full force and effect for a period of eight (8) years *from and after January 1st, A. D. 1920*, and, that the death, disability, withdrawal or removal of any one or more of said copartners shall

not work a dissolution of said copartnership as to those copartners who survive or remain.

Witness the hands and seals of the parties hereto on the day and the year first above written.

> LEWIS E. CREWS. [SEAL.]
> JOHN A. BREEN. [SEAL.]
> KIERAN J. PHELAN. [SEAL.]
> ARCHA B. MONROE. [SEAL.]
> CHARLES A. LEATZOW. [SEAL.]

(Italics ours.)

13. Thereafter, on January 30, 1920, a meeting of the stockholders of the Citizens' Loan Association was held, at which meeting the following resolution was adopted:

> Resolution adopted by the stockholders of Citizens' Loan Association, a corporation, held January 30, 1920:
>
> Whereas, on or about the 1st day of January, 1920, all of the stockholders of said corporation entered into a certain contract by and between themselves pursuant to which they were to and did take over the entire assets of said corporation including the good will of the business *theretofore carried on by said corporation* and *whereupon said corporation at once ceased to engage in any kind of business*, and,
>
> Whereas at that time the corporation was not indebted in any sum whatever to any person, firm, or corporation, *except for* county, State, and *Federal taxes, to become due and payable in.1920*, and,
>
> Whereas it is the desire and intention of said stockholders *to dissolve said corporation* and surrender the charter thereof, now therefore,
>
> Be it resolved, That each and every of said stockholders assume and become liable to pay all of said taxes *in the name of and for the use and benefit of said corporation* to the taxing body entitled thereto, and,
>
> Be it further resolved, That said corporation be and the same is hereby dissolved and the president and secretary thereof be and hereby are directed to take such steps as may be required by law to effect said dissolution.   (Italics ours.)

Thereafter, on February 19, 1920, the corporation duly filed a corporation and profits tax return for the calendar year 1919, which return was, at the hearing, made a part of the record in this appeal.

14. On March 16, 1921, a partnership return of income was filed by the Citizens' Loan Association, by John A. Breen as a copartner.

15. On audit the Commissioner determined that the Citizens Loan Association was during the years 1918, 1919, and 1920, a corporation and taxable as such. Upon that basis he computed the taxes of the Citizens Loan Association and determined that a deficiency existed for the years mentioned, as follows: $2,686.83 for 1918, $2,788.70 for 1919, and $17,272.58 for 1920, a total of $22,748.11. He notified the taxpayer of such determination by registered letter dated September 3, 1924, and from that determination the taxpayer appeals. Petition was filed October 18, 1924.

### DECISION.

The tax should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on seven days' notice in accordance with Rule 50.

### OPINION.

KORNER: The only question for determination here is whether the income reported by the Citizens Loan Association, a corporation, for the years 1918 and 1919 and by the Citizens Loan Association, a copartnership, for the year 1920, belonged in fact to the corpora-

tion or the copartnership. If the income reported is attributable to the corporation the determination of the Commissioner should be approved; if it is attributable to the partnership the determination of the Commissioner should be disapproved and the income in question apportioned among the several members of the copartnership, in accordance with section 218(a) of the Revenue Act of 1918.

Taxpayer admits that there was during the years 1918, 1919, and 1920, a corporation organized under the laws of the State of Illinois, and known as the Citizens Loan Association. It contends, however, that there was in existence during those years a copartnership also operating under the name of the Citizens Loan Association and that the income reported by the corporation for the years 1918 and 1919 and also the income reported by the copartnership for the year 1920, now proposed to be taxed as corporation income, was earned by the copartnership and, as a matter of fact and law, belonged to the copartnership and should be reported by and taxed as income to the several partners. With this contention we are unable to agree.

The testimony in this case is not entirely clear. On the other hand it is full of conflicting statements and as to the material points is sometimes vague and confusing. However, the testimony when considered with the other evidence, establishes the following pertinent facts which we believe are decisive of the issue presented. The evidence clearly establishes to our mind that prior to July 1, 1917, there was in existence a corporation organized under the laws of the State of Illinois and known as the Half Rate Loan Co. There was also a partnership operating under the trade name of South Side Savings Bank. Some time in the month of July, 1917, the Half Rate Loan Co. amended its charter, increased its authorized capital and changed its corporate name to Citizens Loan Association. It immediately distributed its assets to its then stockholders, and then issued its capital stock to the members of the copartnership, the South Side Savings Bank, in exact proportion to their respective interests in the partnership and received in exchange all the assets of the partnership which had been used in its "small loan business." The partnership then and there became completely divorced and separated from the small loan business taken over by the corporation, although it continued to operate for the purpose of liquidating the savings bank side of its business. The corporation continued in business during the years 1918 and 1919 and reported its corporate income. On December 27, 1919, the stockholders, by written instrument, agreed to form a new partnership composed of themselves, to take over the assets and business of the corporation, and recited in the agreement their reasons therefor, to wit, that "the laws of Illinois do not permit a corporation to carry on such a business" (the small-loan business), and that "the corporation has caused increased taxation to said parties." On January 1, 1920, the assets of the corporation were delivered to the new partnership and soon thereafter it was resolved by the stockholders of the corporation that the corporation should be dissolved. It was not in law dissolved but it was in fact abandoned and became dormant on January 1, 1920, and has transacted no business since that time.

The claim made by taxpayer that the business operated as the Citizens Loan Association during the years 1918 and 1919 did not belong to the corporation but to a partnership of the same name, is

not borne out by the evidence. In fact, it does not appear that there was ever a partnership by that name prior to January 1, 1920. It is true that in February, 1917, a partnership was formed which operated under the name of the South Side Savings Bank, but its assets, with the exception of those used exclusively in the banking end of its business, were, in July, 1917, taken over by the corporation in exchange for its capital stock. This partnership which became practically lifeless when the small loan business was transferred to the corporation, appears to have used at times the name " Citizens Loan Association " as well as its own trade name. This fact does not, however, establish any ownership by the partnership of the assets of the corporation. The small loan business of the partnership was transferred to the corporation, belonged to it from the time of such transfer and was operated as a corporation business during the years 1918 and 1919. This fact is clearly established by the act of the stockholders on December 27, 1919, when they formed a new partnership, for a formal legal instrument which recites that the assets in question belonged to the corporation. That they did not belong to the old partnership is further established by the fact that a new partnership was formed composed of the same members who composed the old partnership. If the assets in question did belong to the old partnership the forming of the new partnership to take them over was a useless and unnecessary action.

After full and careful consideration of the evidence in this case, we are of the opinion that the Citizens Loan Association, a corporation, succeeded to the small loan business of the South Side Savings Bank in 1917, and continued in business during the years 1918 and 1919, and that the income in question for those years is properly attributable to it and not to any partnership of the same name. The determination of the Commissioner as to those years is therefore approved. With reference to the year 1920, we find that the assets of the corporation were on January 1, 1920, transferred to a partnership known as the Citizens Loan Association, and that the corporation ceased its operations on that date. The income in question for the year 1920, therefore is the income of the new partnership and should be apportioned among and reported by the several partners in their individual returns. The determination of the Commissioner as to the year 1920 is therefore disapproved.